MINNIE RIBACK, Appellant, Respondent, *v.* THE PRUDENCE COMPANY, INC., Respondent, Appellant.

Supreme Court, Appellate Term, Second Department, July 13, 1934.

*Oscar A. Katz [Leo Lilienfeld of counsel], for the plaintiff.*

*Louis S. Posner [Harold S. Lynton of counsel], for the defendant.*

CROPSEY, J. The action is upon a written guaranty of payment of four bonds. The maker of the bonds is not a party to the action, nor does the plaintiff seek to recover upon the bonds. The bonds were made by the Prudence Bonds Corporation, a separate and distinct entity, and not the defendant herein. These were first mortgage collateral bonds, each in the sum of $100, and payable January 1, 1932, with interest at five and one-half per cent per annum, payable January first and July first of each year. On the reverse side of each bond is the written guaranty of the defendant which is the basis of this action. In this the defendant guarantees to the holder of the bond the punctual payment by Prudence Bonds Corporation of the interest as the same becomes due and also the payment of the principal within eighteen months after its due date.

The action is to recover the amount of the bonds, with interest from January 1, 1933. Eighteen months had elapsed after the bonds became due by their terms before the suit was instituted.

After the defendant had answered, plaintiff moved for summary judgment pursuant to rules 113 and 114 of the Rules of Civil Practice. Defendant opposed this motion and countered by making a similar motion and also an additional and separate motion to dismiss the complaint or to stay all proceedings in the action on the part of the plaintiff until July 1, 1934, this latter motion being based upon the provisions of the so-called Mortgage Moratorium Act, which is chapter 793 of the Laws of 1933. This latter motion of the defendant was denied, as was plaintiff's motion for summary judgment, and defendant's motion for summary judgment was granted. The appeals raise the points involved in those motions.

There was no denial in the papers opposing plaintiff's motion for summary judgment of any of the material facts therein alleged and it must be conceded that plaintiff would be entitled to judgment unless the defendant has a defense.

In the defendant's answer two defenses are pleaded. As stating the nature of these defenses we quote from defendant's brief: (1) " No action is maintainable against defendant, a domestic banking corporation, under the Banking Moratorium Act and the rules and regulations issued by the Superintendent of Banks pursuant thereto;" and (2) " Under the terms of the said bonds and the trust agreement subject to which they were issued, action upon these

bonds could not be maintained by plaintiff in her individual capacity but must be prosecuted in behalf of all bondholders similarly situated by the trustee under the indenture."

In the defendant's papers opposing plaintiff's motion and supporting its own motion, additional matters are set forth which are not contained in the answer and which are claimed by the defendant to constitute a third defense, and for the nature of this we again quote from defendant's brief: (3) " Under the Mortgage Moratorium Act no action is maintainable by plaintiff upon these bonds until July 1, 1934."

The questions for determination here, as they were in the court below, are whether any of these defenses is sufficient, that is, whether in fact either is a defense.

The court below granted defendant's motion for summary judgment solely upon its second pleaded defense, namely, that the provisions of the trust agreement prohibited the plaintiff from maintaining this action. We shall, therefore, consider the sufficiency of that defense first.

The papers show that about July 1, 1925, the defendant entered into an agreement with the Central Union Trust Company of New York, whereby, under the conditions and the terms therein mentioned, it guaranteed payment of the principal and interest upon the bonds issued under a collateral indenture or trust agreement entered into on the same day between Prudence Bonds Corporation and the said trust company, as trustee, to secure an issue of first mortgage collateral bonds, sixth series, which bonds were certified by the trustee as provided in the trust agreement, and were issued and sold by the Prudence Bonds Corporation, and that the bonds sued on by the plaintiff were some of the bonds referred to; and that all of the bonds bore the guaranty of the defendant, which contained, among other things, the following provision: " By the acceptance of the within bond, the holder thereof agrees to the terms and conditions of this guarantee and to all the provisions and conditions of the within mentioned Trust Agreement, including those limiting the exercise by the Trustee of rights and remedies thereunder upon default."

It is further alleged that the bonds bore upon their face the following provisions: " In event of certain defaults specified in said Trust Agreement, the principal of this bond and of all Prudence Bonds, Sixth Series, secured by said Trust Agreement may be declared and become due and payable as provided in said Trust Agreement.

" Reference is hereby made to said Trust Indenture for a description of the ' Trust Fund ' created to secure the payment of the

principal and interest of such bonds, the nature of the securities constituting the 'Trust Fund,' the rights and remedies of the Trustee and the respective holders of said Prudence-Bonds, the rights of the corporation and the terms and conditions under which said bonds are secured, issued and guaranteed."

It also appears that the agreement of guaranty already referred to recites, " Reference to said Trust Agreement being hereby specifically made for the exact terms thereof," and contains the following provision in paragraph fifth: " The Trustee is joined as a party to this agreement for the purpose of securing the benefits thereof to the holders of said Prudence-Bonds, Sixth Series, and for the further security of said bonds. The provisions of said Trust Agreement, and in particular the provisions of Article V thereof in respect to the rights and duties of the Trustee thereunder, shall be taken to be and hereby are made a part of this Agreement in respect to the rights and duties of the Trustee thereunder."

It is further alleged that the operative provision of the trust agreement, which also has been heretofore referred to, is as follows: " Limiting Action by Bond holders.— The holder of any Prudence-Bond or coupon hereunder shall not have the right to institute any suit, action or proceeding at law or in equity upon said bond or coupon or in respect to this Agreement or to any rights or remedies hereunder unless such holder shall previously have given to the Trustee written notice of an existing event of default under which it may take action and of continuance thereof and unless also, the holders of at least twenty-five percentum in amount of the said Prudence-Bonds then outstanding shall have made written request upon the Trustee and shall have afforded to it reasonable opportunity to proceed itself to exercise the powers herein granted and shall have tendered to it satisfactory indemnity; it being intended that one or more holders of said bonds or coupons shall not have any right in any manner whatever to affect the lien of this Agreement by his or their action or to enforce any right hereunder except in the manner herein provided, and that all proceedings hereunder shall be instituted in the manner herein provided for the equal benefit of all holders of said bonds and coupons."

None of the documents themselves is made a part of the record and the foregoing are the only provisions of any of them set forth in the papers. The agreement of guaranty apparently is a document made by the defendant and the trustee, and the trust agreement is one between the trustee and the maker of the bonds. But there is nothing to show what the agreement of guaranty contains, nor what are the provisions of the trust agreement, except as they are extracted above.

The papers do not show that the trustee has any right of action under any conditions against the guarantor, that is, the defendant. If the plaintiff, therefore, or any other holder of bonds, may not have such an action, the guarantor may never be sued and the guaranty would be but a piece of rhetoric. The court below pointed out that this was an action against the guarantor, but seems to have overlooked the facts that have just been noted. Even if the plaintiff could not sue the maker of the bonds because of the quoted provisions of the trust agreement, that would be no reason for denying her the right to sue the guarantor, as she has done. Defendant's obligation, by its guaranty, runs to the holder of the bonds, that is, the plaintiff, and to no one else. By the guaranty it assumes no liability to the trustee. Nor does that part of the guaranty which defendant stresses in any way limit or restrict its liability. The part referred to contains the provision that by the acceptance of the bond, the holder agrees to the terms of the guaranty, and to all the provisions and conditions of the trust agreement, " including those limiting the exercise by the Trustee of rights and remedies thereunder upon default." Of course the plaintiff, by acceptance of the bonds, agreed to the terms and conditions of the guaranty. But what were those terms and conditions? Merely that the maker of the bonds would pay the interest on them as it became due and also the principal within eighteen months after it became due. The interest due July 1, 1933, was not paid and that forms a part of plaintiff's complaint. The principal became due January 1, 1932. By the terms of the guaranty the defendant had eighteen months thereafter in which to make that payment, so that the principal became due from the defendant on July 1, 1933. That, likewise, was not paid, and this suit covers that as well as the interest in arrears. (Apparently interest was paid for a year after the principal became due.)

That portion of the language in the guaranty to the effect that by the acceptance of the bond the holder agrees to all the provisions of the trust agreement, in no way limits defendant's liability. This might be an additional ground for preventing the plaintiff from suing the maker of the bonds if she undertook so to do, although we do not so hold. It in no way restricts the plaintiff's right to sue the guarantor. In considering this provision the defendant underlines portions of it, and, among others, stresses the words, " limiting the exercise by the Trustee of rights and remedies thereunder upon default." As already has been pointed out, there is nothing to show that the trustee under the trust agreement has any right of action against this defendant in any event, even upon default. It may be that the trustee would have a right of action against the maker

of the bonds upon default, and this is evidently the matter to which the last quoted language refers. That, however, in no way affects plaintiff's right of action against the defendant. The provision of the trust agreement is merely that the holder of a bond shall not have the right to bring an action upon it or in respect to the trust agreement or to any rights or remedies thereunder unless such holder shall previously have given notice to the trustee and complied with the other conditions. But there is nothing in those provisions that bars any action by a bondholder against the guarantor. In fact these provisions make no reference to the guaranty. They merely prohibit a bondholder from suing upon the bond or acquiring any rights under the trust agreement. The plaintiff is not suing upon the bond nor has her action anything to do with the trust agreement. She claims no right or remedy under it. The sole right which she seeks to enforce arises out of the written guaranty made by the defendant.

Thus, no matter what would be the proper holding if plaintiff were seeking to sue upon the bonds and was bringing an action against the maker of them, such a holding would in no way affect her present right of action, or the defendant's liability upon its written guaranty. The second defense pleaded in the answer is, therefore, insufficient.

We shall now consider the first defense pleaded in the answer. This is based upon the emergency that is said to exist and the provisions of chapter 41 of the Laws of 1933. In support of this defense there are set forth in the papers various proclamations of the President of the United States and of the Governors of this and other States, and some of the enactments pursuant thereto, and reference is also made to chapters 41 and 42 of the Laws of 1933, and it is alleged that pursuant to the proclamations and the statutes referred to, the Banking Board of the State of New York issued certain regulations to the defendant restricting the payments of interest and principal due upon guaranties and collateral trust bonds to the holders of such guaranties and bonds to such sums as should have been received from the mortgagors up to the fifteenth and thirtieth days of each month upon the mortgages securing such guaranties or bonds, less the reasonable cost of the collection and disbursement of those moneys and reserves for the payment of taxes if necessary for the protection of the interest of the holders of guaranties or bonds, and that the said Banking Board further directed that the foregoing regulations should continue until modified or rescinded by the Superintendent of Banks.

Chapter 41 of the Laws of 1933 is entitled: " An act in relation to the powers of the banking board organized and existing pursuant

to section ten-a of the banking law during the existing emergency." It declares that a public emergency exists, and that during the period of the emergency, as therein provided, the Banking Board should have power to suspend any provision of the Banking Law in whole or in part, and also should have power to adopt, rescind or amend rules and regulations inconsistent with and in contravention of any law to safeguard the interests of depositors and stockholders in corporations subject to the supervision of the Banking Department, and to prescribe and regulate business by such corporations. A violation of any of the provisions of the act, or of any resolution adopted by the Banking Board pursuant thereto, is made a misdemeanor.

We do not state the substance of chapter 42 of the Laws of 1933 because, although it is referred to in the papers, the defendant here does not in any way rely upon it and it seems plainly to have nothing to do with the situation.

Defendant's papers do refer to another chapter of the Laws of 1933. The reference is to chapter 456, but that seems to be a typographical error, for that chapter has nothing to do with the matter. Chapter 453 may be the one to which reference was intended. This is entitled: " An act to amend the insurance law to provide for the creation of guaranteed mortgage certificate participation protection corporations and regulating such corporations." This chapter, however, can have no bearing upon the situation because, as its title shows, it amends the Insurance Law and applies only to corporations that are organized under that law. The defendant in this action was not so created. It was organized under the Banking Law, as the papers concede.

Chapter 41, above referred to, gives, as has been stated, the Banking Board authority to make rules and regulations and to suspend any provision of the Banking Law. The Banking Board was created by section 10-a of the Banking Law, which was enacted by chapter 118 of the Laws of 1932. This Board consists of nine members, the Superintendent of Banks being one, and also its chairman and executive head. The other eight members are to be appointed as the statute prescribes. The defendant's answer alleges that " the Banking Department of the State of New York and the Banking Board of the State of New York, and Joseph A. Broderick, as superintendent of banks of the State of New York," acting under the authority referred to, issued the regulations that form the basis of this defense. There is a similar statement in the defendant's papers, and those state that a copy of the regulations referred to is annexed as an exhibit. That exhibit, however, is merely a communication from the Superintendent of Banks and

not from him as chairman of the Banking Board. There is nothing to show that the regulations in question had been formulated by the Banking Board, and that Board alone, under the statute, is given the power so to do. The statute does not give the Superintendent of Banks such power. Furthermore, the exhibit referred to does not even purport to have been sent under the authority of chapter 41, nor does it purport to show that the regulations therein contained were made by the Banking Board. This communication recites the President's proclamation declaring a bank holiday, the executive order, and the interpretations of the Treasury Department concerning the same, and advises loan companies subject to the supervision of the Banking Department, whose principal business consists of the investment in sale and purchase of real estate mortgages and mortage certificates guaranteed by such companies, of the rules and regulations therein set forth, which it is stated must be conformed with by such companies in the resumption of business. Then follow the provisions that are relied upon by the defendant herein to sustain this defense. None of this has any relation to the provisions contained in chapter 41.

We need not pass upon the contention of the plaintiff that this chapter refers only to banks and does not apply to corporations such as the defendant, because, as already pointed out, the only basis for this defense must be found in the communication from the Superintendent of Banks; and even if the provisions of chapter 41 were applicable, there is nothing to show that any regulations have been prescribed pursuant to the power given by that act. That act purported to grant power to the Banking Board. There is nothing to show that the Banking Board has ever acted upon that power. The action of the Superintendent of Banks was not taken under it and could not have been because that act did not give him any additional power.

There remains for consideration the unpleaded defense, that is, the one that it is not contained in the answer but which it set forth in defendant's other papers. This defense is based upon the provisions of chapter 793 of the Laws of 1933, the so-called Mortgage Moratorium Act. This chapter recited the existence of an emergency and added new sections to the Civil Practice Act. One of those new sections is 1077-b. It reads in part: " No action shall be maintainable or judgment be entered during such emergency upon any guaranty of payment of any share or part of any bond and/or mortgage or group of bonds and/or mortgages represented by a certificate, bond, debenture, or other instrument, nor upon any note, bond, debenture or other instrument being part of a series issued against, or secured by the deposit of a bond and/or

mortgage or a group of bonds and/or mortgages so long as interest at the rate prescribed shall be paid upon any such certificate, note, bond, debenture or other instrument."

This enactment became effective August 26, 1933. At that time this action was not pending. This action was begun on September 1, 1933. As already pointed out, it was brought to recover the principal of the bonds which was due on January 1, 1932, and which the defendant agreed to pay on July 1, 1933, and interest from January 1, 1933. The interest was payable semi-annually. Thus, on July 1, 1933, there had been a breach of the guaranty by the defendant in two particulars — a failure to pay the principal and a failure to pay the interest.

By its terms section 1077-b is to be effective only " so long as interest at the rate prescribed shall be paid." When this action was started, therefore, the statute in question was not applicable. It furnished no defense to an action to recover principal and interest both of which were in default.

The defendant attempts to circumvent this situation by claiming that some twenty-five days after the action was started, it made a tender of the interest. The plaintiff did not accept the tender, and the interest has not in fact been paid. If the action were to recover solely the unpaid interest, these facts, in the absence of a proper pleading by the defendant and the taking of other proper steps by it, would constitute no defense whatever. That recovery is also sought of the principal cannot change the legal situation. Upon the pleadings, so far as this matter is concerned, there is absolutely no defense, and with the other defenses disposed of, plaintiff would be entitled to judgment. Merely making a tender of the interest, assuming it was a good tender, which does not appear here, would not be a defense to the action even if the facts pertaining to it were pleaded. In order to make it a defense at all, it would be necessary for the defendant not merely to make a proper tender but also to deposit the money into court. And such a tender and deposit would seem to be insufficient to constitute a defense, because the plaintiff would be also entitled to costs, the tender, concededly, not having been made until after the action had been brought.

Section 1077-e of the Civil Practice Act, which is part of the chapter in question, makes the provisions of section 1077-b, upon which defendant relies, applicable " to any action or proceeding heretofore instituted for the foreclosure of a mortgage within the scope of this act unless the same has proceeded to final judgment directing the sale of the mortgaged premises, and any such action shall be dismissed upon payment by any defendant to the

plaintiff of taxable costs and the remedying of any default other than the payment of principal or any installment of principal within thirty days after this act takes effect, but otherwise such action or proceeding may continue."

Plaintiff urges that this section applies only to actions pending at the time of its enactment, and then only to actions to foreclose a mortgage. The contention appears to be sound. This section by its terms refers only to an action for the foreclosure of a mortgage which was pending when the act took effect; and it also states that the remedying of any default in such an action other than the payment of principal or installment may be made " within thirty days after the act takes effect." It follows that, except in the case of a pending action to foreclose a mortgage, the statute gives a defendant no right, after suit brought, to pay unpaid interest or other obligations. As, concededly, the defendant was in default at the time the action was commenced, and as at that time interest, as well as principal, was in arrears, the action is properly maintainable.

Section 1077-b provides that " No action shall be maintainable or judgment be entered," but the balance of that section shows that the inhibition applies only where the sole recovery sought is the principal debt. It does not follow that where an action was properly begun after the statute was enacted, and was brought not merely to recover the principal but also interest that was due, the defendant may, by later tendering the interest and even the costs, take advantage of the statute. There seems to be no language giving it any such right. Other provisions of the same statute seem to support this conclusion. Thus in section 1077-a it is provided that no action to foreclose a mortgage shall be maintainable " solely for or on account of a default in the payment of principal," the same section further saying: " however, that where a default authorizing foreclosure shall have occurred under the terms of the bond or mortgage or other agreement, other than the non-payment of principal or an installment of principal, and any grace period therein specified shall have expired, then the rights and remedies of the holder of the mortgage shall not be affected by this act." And in the earlier part of section 1077-b it is provided that no action shall be maintainable or judgment entered upon any bond, if the indebtedness originated simultaneously with the mortgage and is secured solely by it, " or upon any guaranty of payment of the principal or installment or amortization of principal of any mortgage within the scope of section ten hundred seventy-seven-a or upon a guaranty of any obligation secured by such mortgage, so long as no action or proceeding shall be maintainable to foreclose

such mortgage." This last quoted provision immediately precedes the portion of the same section which is relied upon by defendant and is quoted in the forward part of this opinion.

The provisions just referred to show plainly that an action may be maintained upon a bond or a guaranty of the bond, if it is secured by a mortgage, where an action could be maintained to foreclose the mortgage. And under the terms of this chapter the mortgage can be foreclosed notwithstanding any of its statutory provisions when interest has not been paid. As to actions to foreclose mortgages which were pending when the statute was enacted, there is the special provision, found in section 1077-e, to which reference has been made, that defaults in the payment of interest may be made good within thirty days after the enactment of the statute, and thus, with the further payment of plaintiff's costs, the action may be dismissed. There is no provision, however, for remedying any defaults, even in the case of the foreclosure of mortgages in actions brought after the act took effect, and which are based upon the non-payment of interest. Such actions may be maintained notwithstanding anything contained in the legislation in question. As such actions may be maintained, then, by the express provision in section 1077-b, an action on the bond secured by the mortgage, or upon a guaranty of such bond, may likewise be maintained; that is, of course, where interest is not paid.

It would be most unreasonable to hold that there was a different provision intended where a guaranty of payment had been made of a share of a bond or mortgage, or of a group of bonds, or mortgages, represented by a bond, which is the present case. There is nothing to indicate that the Legislature intended to give any special preference to such guarantors — certainly no more preference than was given by the statute to the guarantor of an obligation secured by a mortgage which is covered by the earlier part of the same section. (*Klinke* v. *Samuels,* 264 N. Y. 144.) The statute " should not be extended by judicial interpretation." (*Weisel* v. *Hagdahl Realty Co.,* 241 App. Div. 314, 321.)

We think the statute did not give to a guarantor of a bond or certificate who was already in default in the payment of interest at the time the statute took effect, additional days of grace in which to pay the overdue interest, where no action to recover such interest had been begun before the statute was enacted. The clear intendment of the enactment was merely to prohibit, after it took effect, the bringing of actions based solely upon a failure to pay principal. The defendant here had been in default in the payment of interest for nearly two months before the statute was passed. If it wished to avail itself of its provisions, it should

have paid that interest at once. It did not do so. Instead, it continued in default in the payment of the interest, as well as the principal, and then, some twenty-five days after plaintiff's action was started, a tender of the interest was made.

The case cited by the defendant (*Realty Associates Securities Corp.* v. *1235 Park Avenue Corp.*, COTILLO, J., Nov. 29, 1933, 152 Misc. 772) seems not to be in point. That was an action in foreclosure which was pending at the time of the passage of chapter 793. At the time of its commencement the only default was in the payment of principal, but later there was also a default in the payment of interest and taxes. The court held that upon paying the interest and taxes, the defendant might procure a discontinuance of the action. Apparently that was all the plaintiff sought.

Nor does the case of *Fieber* v. *Cardassi* (241 App. Div. 743) support defendant's contention. That action was begun before chapter 793 became a law. It was to foreclose a mortgage for non-payment of principal, interest and taxes. Under the provisions of the act, the defendant, upon paying the interest and taxes within thirty days, had the right to have the action discontinued or its prosecution suspended. While the court said that the tender may not have been made within the thirty days after the chapter became a law, it found that a timely tender had been waived by the plaintiff. The case at bar was not begun until after the statute was passed and there is no claim of any waiver.

The defendant urges that it could not pay the interest on its due date because it was by law forbidden to do so. This statement refers to the regulations issued by the Superintendent of Banks, which have already been mentioned. This claim, however, is without force, and defendant's own action concedes this, because the defendant did make a tender of some kind of the unpaid interest after the action was commenced. At the time of that tender there had been no change in the regulations. In other words, defendant's situation was the same when it made the tender as it was when the interest became due.

The judgment dismissing the complaint and the order granting defendant's motion for summary judgment, and the order denying plaintiff's motion for summary judgment should be reversed, with thirty dollars costs to the plaintiff, and defendant's motion for summary judgment denied, and plaintiff's motion for summary judgment granted, with ten dollars costs, and judgment directed for the plaintiff for the amount claimed, with appropriate costs in the court below. The order in so far as it denied defendant's motion to dismiss the complaint pursuant to chapter 793 of the Laws of 1933 should be affirmed.

MACCRATE and LEWIS, JJ., concur.