FIRST TRUST COMPANY IN OSHKOSH, Trustee, Respondent, vs. MAXCY, Appellant.

*October 13—November 9, 1938.*

The cause was submitted for the appellant on the brief of *Olin & Butler* of Madison, and for the respondent on that of *Weed & Hollister* and *Barber, Keefe, Patri & Stillman*, all of Oshkosh.

NELSON, J.   The defendant contends that the court erred, (1) in holding that the complaint stated a cause of ac-

tion in favor of the plaintiff; (2) in holding that the plaintiff had legal capacity to sue; (3) in holding that there was no defect of parties plaintiff; and (4) in assessing costs against him in connection with the overruling of his demurrer. The defendant's contentions require the determination of two questions. The first and principal question is whether the plaintiff, as trustee, is authorized to act for and in behalf of the bondholders under the trust deed in enforcing the guaranty signed by the defendant. In other words, is the right to sue the defendant on his guaranty in the plaintiff, as trustee, or in the several bondholders? The second question is whether the court, upon overruling the demurrer, erred in assessing $10 costs against the defendant, without granting leave to plead over.

The complaint alleges that the plaintiff is a duly organized Wisconsin corporation engaged in the business of trust-company banking, and is authorized to act as corporate trustee under trust agreements and indentures; that the action is brought by the plaintiff in its capacity of corporate trustee pursuant to a trust agreement entered into between the company and the plaintiff on January 16, 1928, and upon the written request of more than a majority in number and amount of the owners of outstanding bonds secured by said trust agreement; that on January 16, 1928, the company, a Wisconsin corporation, duly executed and delivered to the plaintiff for certification, its coupon bonds in the amount of $90,000, dated that day; that to secure the payment of said bonds the company at the same time made, executed, and delivered to the plaintiff, as trustee, a trust agreement or indenture, whereby said company, among other things, granted, conveyed, set over, assigned, and transferred to the plaintiff, as trustee, certain notes and contracts fully described in said trust agreement; that at the same time and before any of said bonds had been certified by the plaintiff

and sold to the public the defendant guaranteed the payment of the principal and interest of all of said bonds in the following form:

"I, W. G. Maxcy, of Oshkosh, Wisconsin, on account of my interest in the Bartola Musical Instrument Company, as a stockholder thereof, and in consideration of the benefit to me accruing and for value received, do hereby guarantee the payment of the principal and interest of all of the bonds (mentioned, described and referred to in the above agreement of even date herewith, between the Bartola Musical Instrument Company and the First Trust Company in Oshkosh, as trustee) as the principal and interest thereof shall fall due in accordance with the terms and provisions of said bonds, and the coupons thereto attached and the said agreement, and I do waive any and all notice or notices of default and dishonor and any and all protest or protests and notice or notices of protest.

"In witness whereof, I have hereunto set my hand and seal this 16th day of January, A. D. 1928.

"W. G. Maxcy.   (Seal.)

"In presence of
  "W. R. Adams,
  "G. E. Pommarane."

that said guaranty was attached to and made a part of the original trust agreement dated the same day and was referred to on the face of each and every of said bonds in the following words:

"The payment of the principal and interest of this bond is further guaranteed by W. G. Maxcy."

The complaint further alleges that there are now outstanding in the hands of the public, bonds in the principal amount of $60,000, which are held and owned by some seventy-six individuals and institutions, and that said bonds are all in default; that due demand for the payment of the principal and interest due on said bonds has been made upon the company, its successors, and the receiver of a successor com-

pany; that notice of said default on the part of the company, and its successors, has been given to the defendant and demand made upon him for the performance of his agreement expressed in his guaranty. The trust agreement, made a part of the complaint, contains the following recitations and provisions:

"Whereas, the party of the first part desires to borrow the sum of ninety thousand dollars ($90,000), as it is by law authorized to do, and to issue its corporate coupon bonds therefor, the payment of the same, both principal and interest, to be secured by the transfer and assignment to the party of the second part, as trustee, of property hereinafter described;"

"Whereas, the party of the first part, . . . has, for the purpose of securing the payment of all said bonds together with the interest coupons thereto attached, authorized and directed its proper officers to execute in its corporate name and in its behalf, . . . and to deliver to the First Trust Company in Oshkosh, as trustee, this agreement, assigning and transferring by way of collateral security to the said trustee, all of its property hereinafter described;"

"This bond is one of a series of two hundred (200) bonds, . . . secured by an agreement of even date between the Bartola Musical Instrument Company and the First Trust Company in Oshkosh, as trustee, assigning to the First Trust Company in Oshkosh, as trustee, one hundred fifteen thousand, three hundred fifty dollars ($115,-350) face value of notes and contracts belonging to the Bartola Musical Instrument Company and held by said trustee as security for the payment of this bond and the other one hundred ninety-nine (199) bonds of this series above mentioned, and this bond and the coupons hereto attached are issued subject to the terms and provisions of said agreement. The payment of the principal and interest of this bond is further guaranteed by W. G. Maxcy."

"Now, therefore, this indenture witnesseth:

"That the said Bartola Musical Instrument Company, in consideration of the premises and of one dollar to it in hand paid by said party of the second part, the receipt whereof is

hereby acknowledged, and in order to secure the payment of the principal and interest of the said bonds and every part thereof as the same shall become due and payable according to the tenor of all of said bonds and of the said coupons, has granted and by these presents does grant, sell, set over, assign and transfer unto said First Trust Company in Oshkosh, as trustee, and unto its successor or successors in trust forever all of the following described personal property, viz.: The following notes and contracts."

"To have and to hold the same as collateral security for the payment of the said bonds and coupons thereto attached and in trust for the equal and proportionate benefit and security of all present and future holders of said bonds and coupons issued and to be issued under and secured by this agreement, . . . the property hereinbefore described, is assigned and transferred to and is to be held and disposed of by the First Trust Company in Oshkosh, as trustee, and subject to which the bonds and coupons secured or intended to be secured hereby, are to be issued and held by each and every holder thereof. . . ."

"Tenth: In case default shall be made in any payment of principal or interest upon any of said bonds, whether said principal be due upon the terms of said bonds or any of them, or shall be declared due under the provisions hereof, and such default shall continue for sixty days, then and in any such event, it shall be lawful for the party of the second part by itself or its attorney or attorneys, agent or agents, successors, or assigns, to grant, sell, transfer, assign and dispose of all and singular the property hereby covered at public auction or vendue to the highest bidder, giving at least ten days' notice thereof by posting notice of sale in three public places in the city of Oshkosh, Winnebago county, Wisconsin, and by publication of such notice, at least ten days before the date of said sale in the Daily Northwestern, a newspaper published in the city of Oshkosh, Wisconsin, or in such other manner and form as may be provided by law and out of the moneys arising from such sale, after deducting therefrom a just allowance for all costs and expenses, advances and liabilities, which may have been made or incurred by the party of the second part, and as well reasonable com-

pensation for its own services, then to apply the proceeds remaining to the payment of the principal of such of the aforesaid bonds as may be at such time unpaid, whether the same shall have previously become due or not, and to the payment of the interest which shall at that time have accrued on such principal and be unpaid without discrimination or preference, but rateably to the aggregate of such unpaid principal and accrued and unpaid interest added together, and after the satisfaction of all of said bonds secured hereby with the interest thereon, to pay over the surplus of such proceeds, if any, to the party of the first part, or to such party as may then be entitled to receive same.

"Eleventh: Upon any default as aforesaid, the party of the second part shall also be entitled to any remedy or relief by action at law or suit in equity in any court of competent jurisdiction, the power of sale hereinbefore set forth, being intended to be cumulative and not to take away or abridge any right or remedy by suit or action in any court having jurisdiction.

"In case of any sale by the party of the second part or its successor or successors in trust hereunder, the party of the first part does hereby authorize, empower and direct the party of the second part, its successor or successors in trust, to make, execute and deliver any and all proper indorsements or assignments and transfers of the property hereby covered so as to insure and secure to the purchaser or purchasers thereof, a good title thereto.

"Twelfth: No holder of any bond or coupon hereby secured shall have any right to institute any suit, action or proceeding in equity or at law for the foreclosure of this agreement or the sale of the property hereby covered *or for enforcing this agreement or having the property, hereby assigned and transferred, applied to the payment of his bond or coupon, or bonds or coupons* unless the party of the second part, its successor or successors in the trust shall have been first duly requested to act in the matter and been also indemnified for so doing, and shall have unreasonably failed for at least sixty days, to act in the matter; *it being the understanding and intention hereof that all proceedings* for the sale of said property in case of default, by advertisement, at public auction or vendue, *and as well, all proceedings at*

*law and equity for the enforcement of the security for the said coupons and bonds, shall be instituted, and had and maintained by the party of the second part,* its successor or successors in trust, as herein provided and contemplated, and for the equal benefit of all holders of the bonds and coupons hereby secured at such time outstanding."

There are numerous other provisions contained in the trust agreement but, concededly, this controversy must largely be determined by a construction of these provisions. No language is contained in the trust agreement proper which specifically refers to the defendant's guaranty except the following language found in the form of the bond contained in the trust agreement:

"The payment of the principal and interest of this bond is further guaranteed by W. G. Maxcy."

The vital question therefore is whether the language of the trust agreement reasonably construed in connection with the surrounding circumstances alleged in the complaint authorizes the plaintiff, as trustee, to enforce, for and in behalf of the bondholders, the guaranty of the defendant. It is conceded by both parties that the authority of a trustee to act for and in behalf of the bondholders under a trust deed must rest upon the provisions of the trust deed. *Connell v. Kaukauna,* 164 Wis. 471, 159 N. W. 927, 160 N. W. 1035; *Schroeder v. Arcade Theater Co.* 175 Wis. 79, 184 N. W. 542; *First National Bank & Trust Co. v. Vegel,* 215 Wis. 359, 254 N. W. 537. It is admitted by the plaintiff that there is no language in the trust agreement which specifically authorizes the plaintiff, as trustee, for and in behalf of the bondholders, to sue the defendant on his guaranty. It concedes that apt language might have been incorporated into the trust agreement which would have rendered its meaning and the intention of the parties thereto wholly free from doubt. Notwithstanding that admission and concession, it

is contended by the plaintiff that the language of the agreement, considered in connection with the surrounding circumstances, is sufficiently broad to authorize the plaintiff, as trustee, for and in behalf of the bondholders, to enforce the liability of the defendant on his guaranty. Obviously, the defendant's guaranty was to be enforced by either the plaintiff, as trustee, or by the individual bondholders. The plaintiff particularly relies upon the language contained in paragraph "Twelfth" of the trust agreement hereinbefore recited in full, and particularly the following:

"It being the understanding and intention hereof that all proceedings for the sale of said property in case of default, by advertisement, at public auction or vendue, *and as well, all proceedings at law and equity for the enforcement of the security for the said coupons and bonds,* shall be instituted, and had and maintained by the party of the second part, its successor or successors in trust, as herein provided and contemplated, and for the equal benefit of all holders of the bonds and coupons hereby secured at such time outstanding."

It is our opinion that this language, considered in connection with the surrounding circumstances, and the other language which precedes it, forbids the bringing of an action by a bondholder upon the guaranty unless the trustee shall have unreasonably failed for at least sixty days to act in the matter. It is, of course, clear that no proceedings for the sale of the notes and contracts assigned to the trustee as collateral security, by advertisement, at public auction or vendue, may be taken by a bondholder unless the trustee unreasonably fails to act for at least sixty days. It is also clear that if the word "security" found in the phrase "for the enforcement of the security," is broad enough to include the guaranty of the defendant then no bondholder has the right to bring an action on the guaranty in the absence of a failure of the trustee to act.

It appears from the allegations of the complaint and from the trust agreement and guaranty, that the defendant, W. G. Maxcy, is a businessman and financier; that the company was desirous of borrowing $90,000 by issuing bonds secured by certain notes and contracts owned by it which it would assign to a trustee; that the defendant was a stockholder of the company, and in consideration of the benefit to accrue to him was willing to guarantee the payment of the principal and interest of its bonds; that the defendant was the president of the company; that the trust agreement was made, executed, and delivered to the plaintiff trustee on January 16, 1928; that at the time it was delivered there was appended thereto the defendant's guaranty; that the defendant's guaranty was dated January 16, 1928; that the defendant, as president of Bartola Musical Instrument Company, signed said agreement for and on behalf of said company; that the same persons witnessed the signature of the defendant as president and his signature on the guaranty, and that the defendant did not, by written indorsement thereon, guarantee the several bonds. Taking all these things into consideration, we think it reasonable to conclude that the language: "and as well, all proceedings at law and equity for the enforcement of the security for the said coupons and bonds, shall be instituted, and had and maintained by the party of the second part, its successor or successors in trust, as herein provided and contemplated, and for the equal benefit of all holders of the bonds and coupons hereby secured at such time outstanding," reasonably construed, is sufficiently broad to include an action at law on the guaranty. Had the statement contained in the form of the bond, to wit:

"The payment of the principal and interest of this bond is further guaranteed by W. G. Maxcy" run as follows:

"The payment of the principal and interest of this bond is further secured by the guaranty of W. G. Maxcy"

·there would be little chance for controversy. It is our opinion that such was the meaning and intention of the language used, and that it was the understanding and intention of paragraph "Twelfth" that if proceedings in behalf of the bondholders were required in addition to that of selling the notes and contracts assigned to the trustee as collateral security, such action should be brought by the trustee. The contention that it was intended in case of a default by the company that each individual bondholder should bring a separate suit against the defendant on his guaranty does not seem reasonable, and such a conclusion is not in our opinion impelled by the language of the trust agreement.

It is therefore our conclusion that the real intention of the parties, ascertained from the language of the trust agreement and the surrounding circumstances, was that the trustee should act for and in behalf of the bondholders not only in the matter of having the property assigned and transferred to it applied to the payment of the bonds and coupons, but also in all proceedings at law and equity for the enforcement of the security for the said coupons and bonds.

It cannot be doubted that each and every bondholder relied upon the guaranty of the defendant as additional security for his bond. We therefore conclude that the trial court was right in holding that the complaint stated a cause of action in favor of the plaintiff, that the plaintiff had legal capacity to sue, and that there was no defect of parties plaintiff.

We have given careful consideration to the case of *Riback v. Prudence Co.* 152 Misc. 331, 336, 273 N. Y. Supp. 508. In that case it was held that an action brought by a bondholder against the guarantor was properly brought notwithstanding the earnest contention of the defendant guarantor that the action should have been brought by the trustee. In that case each bond was guaranteed on its reverse side by the defendant. The court stated that "the papers do not show

that the trustee has any right of action under any conditions against the guarantor" and that the "defendant's obligation, by its guaranty, runs to the holder of the bonds, . . . and to no one else." It is quite apparent, therefore, that the decision of that case was grounded upon a construction of the particular language of the trust deed and guaranty there considered. Each case involving the construction of a written instrument must be decided upon its own particular facts.

Did the court err in assessing $10 costs against the defendant when it overruled his demurrer, without granting leave to plead over? An identical question was considered in the case of *Marshall v. Wittig,* 205 Wis. 510, 516, 238 N. W. 390. It was there said:

"However, the order overruling the demurrer is defective in so far as it ordered the unconditional payment by the defendant of ten dollars motion fee, and the order must be modified by striking out that provision." (Citing cases.)

In that case, as in the present, no attempt was made by the defendant to call the attention of the trial court to the error of its order. The court, in *Marshall v. Wittig, supra,* in its mandate, stated:

"Neither party to recover costs. Respondent shall pay the fees of the clerk of this court."

Since the situation there was in all respects identical with the situation here we shall pursue the course followed in that case. The order must be modified by striking out the following language contained therein:

"With costs herein taxed in the sum of $10 payable forthwith."

*By the Court.*—Order modified by striking out the provision for the unconditional payment of $10 motion costs, and affirmed as modified. Cause remanded for further proceedings. Neither party to recover costs. Respondent shall pay the fees of the clerk of this court.