Solomon E. Weisel, Appellant, *v.* The Hagdahl Realty Company, Inc., Respondent, Impleaded with The People of the State of New York and Others, Defendants.

Second Department, May 3, 1934.

*Abraham Levine* [*Albert Stiefel* with him on the brief], for the appellant.

*Morton H. Abrahams* [*Martin J. Fay* with him on the brief], for the respondent.

DAVIS, J. This appeal presents the question of interpretation of the emergency legislation recently enacted in respect to deficiency judgments. (Civ. Prac. Act, §§ 1083-a, 1083-b.) The action was brought to foreclose a third mortgage on certain premises. The respondent, The Hagdahl Realty Company, Inc., was the sole obligor on the bond and mortgage. On October 20, 1933, a judgment of foreclosure and sale was rendered which directed the sale of the mortgaged premises and payment to the plaintiff of $11,120.22 with interest, and further directed that said defendant pay to plaintiff the amount of any deficiency. This judgment was not entered until February 6, 1934. It determined the liability of the obligor on the debt.

In the meantime and while this action was pending an action was brought to foreclose the first mortgage on the same premises; and on December 14, 1933, a judgment of foreclosure and sale was entered which directed the payment of $96,101.05 with interest to the plaintiff therein. The appellant herein (the third mortgagee) had been joined as a party defendant. On February 16, 1934, the premises were sold as the judgment directed. The first mortgagee purchased them for $1,000. Obviously it would have been futile for this plaintiff to incur the expense of a sale when the other sale was impending and the amount the property would bring was undetermined.

On February 19, 1934, this plaintiff moved for an order directing the entry of a judgment against the obligor for the deficiency. Neither plaintiff nor defendant offered any proof as to the value of the property. Plaintiff's motion was denied, it being held that " This case is clearly within either C. P. A. Sec. 1083-a or 1083-b. In either case, the market value of the property on the day of sale

must appear as well as all liens and incumbrances prior to the lien of the mortgage in suit, etc. *Meurer* v. *Keimel* (150 Misc. 113) is distinguishable from this case because in that case the sale occurred before the date fixed by the act."

Just what it would avail plaintiff to make proof of the value of the property is not apparent. The property had passed into the ownership of another, and plaintiff cannot now satisfy his debt from it no matter what its value may be. His lien has been foreclosed and barred, together with the mortgagor's title. (Civ. Prac. Act, § 1085.) As the case stands, it is said that there is money in the hands of a receiver whom plaintiff had appointed; but it does not appear how he can recover even that sum if his debt is wiped out and he is not entitled to a judgment.

The new sections, 1083-a and 1083-b, were added to the Civil Practice Act by chapter 794 of the Laws of 1933, in effect August 28, 1933. Other acts adopted about the same time were intended to have a similar effect, viz., in limiting until July 1, 1934, the rights of mortgagees. (Laws of 1933, chap. 793.) The purpose of these acts was to " prevent a mortgagee from foreclosing property and from obtaining, in addition, an exaggerated deficiency judgment against the mortgagor." (Memorandum of Governor, April 24, 1934, on act extending the period to July 1, 1935.)

Section 1083-a is as follows: " No judgment shall be granted for any residue of the debt remaining unsatisfied as prescribed by the preceding section where the mortgaged property shall be sold during the emergency, except as herein provided. *Simultaneously with the making of a motion for an order confirming the sale or in any event within ninety days after the date of the sale,* the party to whom *such residue* shall be owing may make a motion in the action for leave to enter a deficiency judgment upon notice to the party against whom such judgment is sought or the attorney who shall have appeared for such party in such action. * * * Upon such motion the court, whether or not the respondent appears, shall determine, upon affidavit or otherwise as it shall direct, the fair and reasonable market value of the mortgaged premises as of the date of sale or such nearest earlier date as there shall have been any market value thereof and shall make an order directing the entry of a deficiency judgment. Such deficiency judgment shall be for an amount equal to the sum of the amount owing by the party liable as determined by the judgment with interest, plus the amount owing on all prior liens and encumbrances with interest, plus costs and disbursements of the action including the referee's fee and disbursements, less the market value as determined by the court or the sale price of the property whichever shall be the higher.

If no motion for a deficiency judgment shall be made as herein prescribed *the proceeds of the sale* regardless of amount *shall be deemed to be in full satisfaction of the mortgage debt* and no right to recover any deficiency in any action or proceeding shall exist." We have italicized the portions deemed important in this and the following section.

The language used evidently applies only to deficiency judgments where a sale has been had in the foreclosure action. No deficiency judgment is to be granted " where the mortgaged property shall be sold " during the emergency period. The motion for leave to enter a deficiency judgment is to be made " Simultaneously with the making of a motion for an order confirming the sale " or " within ninety days after the date of the sale." The referee's fees and disbursements are to be paid, implying that there has been a sale; and if *no motion for a deficiency judgment is made*, " the proceeds of the sale * * * shall be deemed to be in full satisfaction of the mortgage debt." There has been no sale of the premises in this action, nor can there be, for the premises have already been sold in the other action. Quite clearly it appears that this section applies only where a deficiency judgment is sought after an actual sale.

Section 1083-b provides as follows: " In any action pending at the time this section as hereby added takes effect, or hereafter commenced during the emergency, *other than an action to foreclose a mortgage,* to recover a judgment for any *indebtedness secured by a mortgage on real property* and which originated simultaneously with such mortgage *and which is secured solely by such mortgage,* against any person or corporation directly or indirectly or contingently liable therefor, any party against whom a money judgment is demanded, shall be entitled to set off the fair and reasonable market value of the mortgaged property *less the amounts owing on prior liens and encumbrances.* In any action to foreclose the mortgage commenced after the emergency as defined by the law shall have expired, a deficiency judgment may be recovered as though this section had not been enacted but the amount of any money judgment recovered as provided in this section shall be deducted in computing such deficiency judgment."

As has been stated, this plaintiff was made a party defendant in the other action; and when the property was sold the lien of his third mortgage was destroyed. (*Sautter* v. *Frick,* 229 App. Div. 345, 347; affd., 256 N. Y. 535; 2 Wiltsie Mtge. Forec. [4th ed.] § 1038.) But the debt was not affected by the foreclosure of the prior mortgage (*Sautter* v. *Frick, supra*); and while the plaintiff could not have the property sold in his foreclosure action, he could, unless section

1083-b applies, obtain a deficiency judgment. It is not essential to such a judgment that the deficiency be ascertained by a sale in the action, but it is sufficient if the amount of the deficiency be ascertained by a sale in an action to foreclose a prior mortgage to which the person liable was a party. (*Frank* v. *Davis*, 135 N. Y. 275.)

If we consider this action one to foreclose a mortgage, it does not come within the terms of section 1083-b, for that applies only to actions " other than an action to foreclose a mortgage." If, now that the possibility of foreclosure and sale has passed, we treat it as merely an action fixing liability on the bond or debt, it is on a bond or indebtedness which is no longer " secured by a mortgage on real property." (See *Meurer* v. *Keimel*, 150 Misc. 113.) There are now no " amounts owing on prior liens and encumbrances," for the lien of the first mortgage has been discharged and the liens of junior mortgages have been extinguished by the sale. There is now no basis for computing a sum less than the judgment which will equitably compensate plaintiff.

In the statute amending the Civil Practice Act, the existence of a public emergency is declared, resulting, among other things, from the abnormal deflation of real property values and the curtailment of incomes by unemployment and other adverse conditions. Other statutes, both State and Federal, have declared that an emergency exists in relation to this or kindred subjects. It was well known that because of the lack of any market for real estate it frequently happened that a mortgagee would foreclose, bid in the property at a nominal sum, and obtain a deficiency judgment practically equal in amount to the face of the mortgage. The mortgagee was, therefore, in the position of obtaining property which in normal times would be of a value equalling or exceeding the amount of the mortgage, and in addition recovering a judgment against the mortgagor for a large amount. This was obviously inequitable, as it was practically a double recovery for one debt. It was to prevent such a situation from arising that the value of the property was required to be shown and offset against any deficiency judgment sought. Section 1083-b was enacted to prevent evasion of the effect of section 1083-a by a suit on the bond instead of applying for a deficiency judgment in foreclosure. The sections would apply to the foreclosure of a first mortgage and also to the foreclosure of junior mortgages where the first mortgage had not been foreclosed. In other words, a junior mortgagee could not purchase at the foreclosure sale property having a value in excess of the first mortgage and of his own mortgage, and at the same time obtain a large deficiency judgment. His debt would be paid at once by the ownership of the property subject only to the first mortgage.

Where the first mortgage has been foreclosed a different situation exists. The second mortgagee has lost the security of the property. If it were held that sections 1083-a and 1083-b applied, and the mortgagor showed by opinion evidence that the property was worth both the amounts of the first and second mortgages, then the second mortgagee would have neither the property nor a deficiency judgment. He would not only be prevented from receiving a double recovery, but he would lose all his rights to enforce repayment of the indebtedness. This would be no temporary suspension of his rights, but would result in their annihilation. The emergency legislation was intended to prevent unconscionable gains by mortgagees through acquiring both the property and a large deficiency judgment to be satisfied from other property of the luckless mortgagors. As we view it, it was not intended to destroy and wipe out all obligations where the mortgagee had suffered a loss of security which had turned out to be inadequate, and leave him entirely remediless with no possible payment from the security and with no right to recover a judgment for the money loaned.

However, if we consider these statutes from the position of the mortgagor, a somewhat different view is presented. Assuming for the moment that the property was equal in value to the sum of the mortgages, if the property is bought by the first mortgagee and the mortgagor is compelled to pay deficiency judgments in favor of the second and third mortgagees, he is obligated to pay something in addition when in fact the property was worth the aggregate amounts of the mortgages. If there had been one mortgage for the total amount instead of three, there could have been no deficiency judgment. The answer is that three mortgages were made as a matter of choice by the mortgagor, who knew at the time that they differed in respect to the priority of lien. It may be argued that the second or third mortgagees should have attended the sale and bid a sufficient sum to protect their respective interests. A like privilege was open to the mortgagor. As a practical question, ordinarily neither would be in a position to take such action, and neither was legally bound so to do.

Article I, section 10, of the United States Constitution provides that no State shall pass any "Law impairing the Obligation of Contracts;" and the Fourteenth Amendment provides that no State shall "deprive any person of * * * property, without due process of law."

The rule as to the impairment of contracts is relative, not absolute. The obligation of a contract may be impaired under conditions roughly classified as follows: (1) Where the contract is entered into in legal contemplation that a change in the public interest

may be made in existing statutes and that a right to legislate on the subject exists; and the contract is made legally subject to that right. Contracts between individuals may become invalid if they are in conflict with the public interest declared by that act, as in the case of interstate commerce, in the rates of public utilities or business affected with a public interest. (*Louisville & Nashville R. R. Co.* v. *Mottley*, 219 U. S. 467; *Union Dry Goods Co.* v. *Georgia P. S. Corp.*, 248 id. 372; *People ex rel. Village of South Glens Falls* v. *P. S. Comm.*, 225 N. Y. 216; *Town of North Hempstead* v. *P. S. Corp.*, 231 id. 447; *Public Service Comm.* v. *Pavilion Nat. Gas Co.*, 232 id. 146; *Matter of Morse* [*Bank of America*], 247 id. 290.) (2) Where there has been a change in the remedies open to parties at the time the contract was made. (*Preston Co.* v. *Funkhouser*, 261 N. Y. 140.) (3) Where there is an emergency requiring drastic action in the exercise of police power to safeguard the vital interests of the people and to promote the public welfare by limiting for a time the existing remedies, or extending the range of privileges to those in acute financial distress. (*Home Bldg. & L. Assn.* v. *Blaisdell*, 290 U. S. 398; *Block* v. *Hirsh*, 256 id. 135; *Brown Co.* v. *Feldman*, Id. 170; *People ex rel. Durham R. Corp.* v. *La Fetra*, 230 N. Y. 429; writ of error dismissed, 257 U. S. 665.)

A similar limitation is imposed in respect to deprivation of certain property rights in promoting the public weal, for statutes may limit the right of use of private property by the owner even if the value thereof be thereby depreciated. (*Matter of Wulfsohn* v. *Burden*, 241 N. Y. 288; *Hadacheck* v. *Los Angeles*, 239 U. S. 394.)

Emergency does not increase constitutional power or diminish constitutional restrictions. (*Home Bldg. & L. Assn.* v. *Blaisdell, supra.*) Such legislation, while it may temporarily limit available remedies, does not contemplate the complete destruction of contract obligations or permanent denial to any person of due process of law. The needs of the hour do not require that the obligation of the plaintiff's contract be so impaired that it will be obliterated and he will be left permanently without remedy because an emergency exists requiring temporary postponement of certain remedies and a satisfaction of secured debts from the property standing as security. The Legislature has not attempted to go so far as to bring this result in cases of the type here presented; and doubtless could not have gone so far without encountering constitutional inhibitions. " The obligation of a contract, which may not be impaired, does not include the particular remedies provided by a State for its enforcement at the time of the inception of the contract, so that the same are made immune from alteration or modification. The withdrawal of all remedies, however, does impair the obligation.

Otherwise the owner of a broken promise would find his cause of action to be nothing more than that 'metaphysical subtlety' * * * — 'an immortal right to bring an eternally prohibited action.' Moreover, a substantial impairment of a means of enforcement is an impairment of the contract obligation." (*Sliosberg* v. *New York Life Ins. Co.*, 244 N. Y. 482, 495.)

It has recently been said: "The decisions of the United States Supreme Court do certainly establish these criteria: Legislation which impairs the obligation of a contract or otherwise deprives a person of his property can be sustained only when enacted for the promotion of the general good of the public, the protection of the lives, health, morals, comfort and general welfare of the people and when the means adopted to secure that end are reasonable. Both the end sought and the means adopted must be legitimate, *i. e.*, within the scope of the reserved power of the State construed in harmony with the constitutional limitation on that power." (*Matter of People* [*Title & Mortgage Guarantee Co.*], 264 N. Y. 69.)

If the object of the legislation now being considered was to prevent unjust recoveries on the part of mortgagees, then it would not apply in this case, for here the third mortgagee will not have both the property and a deficiency judgment. If we adopt the view taken at Special Term, then, as we have said, the mortgagee will lose everything, both mortgage and debt. If we take the contrary view, then the mortgagor may be compelled to pay a deficiency judgment although the property may have been fairly worth the total of the mortgages. This condition arises through no fault of the junior mortgagee and he is guilty of no unconscionable conduct resulting in gain to him. We are of opinion that the legislation was not intended to bring about such a loss to the mortgagee and could not legally have that effect — otherwise "the means adopted to secure that end" would not be reasonable.

Very likely the Legislature could have provided that the entry of a deficiency judgment in cases of this type should be deferred during the emergency period. This has not been done. We take the statute as it is written. By its terms it is not applicable to the situation presented in this case; and its provisions should not be extended by judicial interpretation to include something in derogation of a common legal right not definitely expressed therein, and justifiable only in the exercise of dynamic and drastic police power. To hold otherwise, as we have said, would result in the complete destruction of the obligation.

Money in the hands of the receiver will of course be applied toward the satisfaction of the judgment.

The order in so far as an appeal is taken therefrom should be

reversed on the law, with ten dollars costs and disbursements, and the motion granted.

LAZANSKY, P. J., KAPPER and HAGARTY, JJ., concur; YOUNG, J., dissents, with memorandum.

YOUNG, J. (dissenting). I dissent. Sections 1083-a and 1083-b of the Civil Practice Act provide, in effect, that no deficiency judgment shall be entered or an action for indebtedness secured by the mortgage maintained, except for an amount equal to the sum of all liens and incumbrances upon the property, with interest, costs, etc., after deducting the fair and reasonable market value as determined by the court, irrespective of any amount realized on the foreclosure sale. The language of section 1083-a of the Civil Practice Act does not refer to a sale under any particular mortgage. The judgment of foreclosure and sale in this action was entered February 6, 1934. The premises were sold under the judgment of foreclosure and sale of the first mortgage on February 16, 1934. At the time this action was commenced the indebtedness to the plaintiff was secured by a mortgage on real property; it originated simultaneously with the mortgage and was secured solely by the mortgage. This mortgage, therefore, was exactly within the language of section 1083-b of the Civil Practice Act. In my judgment the mortgagor, under these circumstances, is entitled to the benefits prescribed by section 1083-b of the Civil Practice Act.

Order in so far as it denies plaintiff's motion for a deficiency judgment against defendant The Hagdahl Realty Company, Inc., reversed on the law, with ten dollars costs and disbursements, and motion granted.