CITY CONSUMER SERVICES, INC.,
a New Jersey corporation,
Plaintiff and Appellee,

v.

Vera Hess PETERS, Defendant
and Appellant.

No. 880453.

Supreme Court of Utah.

May 8, 1991.

J. Scott Lundberg, Sally B. McMinimee,
Salt Lake City, for plaintiff and appellee.

Ephraim H. Fankhauser, Salt Lake City, for defendant and appellant.

Scott H. Clark, James S. Jardine, Douglas M. Monson, Stephen C. Tingey, Salt Lake City, for amicus curiae Utah Bankers Ass'n.

William A. Meaders, Jr., Salt Lake City, for amicus curiae Utah League of Insured Sav.

Bruce L. Richards, Salt Lake City, for amicus curiae Utah League of Credit Unions.

HOWE, Associate Chief Justice:

Defendant Vera Peters appeals from a summary judgment in favor of a nonforeclosing junior lienholder, plaintiff City Consumer Services. City sued Peters on her promissory note after the real property securing the note had been exhausted by a senior lienholder's foreclosure action. The main issue presented is whether a debtor may invoke Utah Code Ann. § 78–37–1, the "one action rule," to bar a nonforeclosing junior lienholder from suing on its note.

In April 1981, Peters was the owner of a condominium in Salt Lake County subject to a trust deed in favor of Prudential Federal Savings which had been given to secure Peters' $54,420 promissory note. About April 30, 1981, she sought a $19,500 loan from City which would be secured by a second deed of trust on her condominium. City had the property appraised and found that the market value was $92,500. City determined that the combined obligations would constitute 80 percent of the appraised value of the property and made the loan to Peters.

Six days after obtaining the loan from City, Peters sold the property for $84,500. The purchaser assumed the balance owing on both notes. By the fall of 1986, both notes were in default. Prudential, the senior lienholder, commenced nonjudicial foreclosure under the trust deed power of sale. City had the property appraised a second time in order to determine whether it would be commercially reasonable to bid in at the foreclosure sale, considering all costs involved. The appraisal was $70,000. At the time of the foreclosure, Prudential was owed approximately $50,000, and City, $17,000. City determined that the appraisal value was insufficient to justify its bidding at the sale. As a result, City did not bid in at the foreclosure sale. Prudential apparently bought the property for the balance owed it.

On October 21, 1987, City filed this action to recover the balance owing on its note, plus interest and attorney fees. The trial court concluded that the one-action rule, section 78–37–1, did not apply to bar City's suit since it was no longer secured after the sale by Prudential, and therefore City was entitled to judgment for the balance owing plus attorney fees.

## I. THE ONE–ACTION RULE: UTAH CODE ANN. § 78–37–1

Peters contends that section 78–37–1 bars City from suing on the note since it did not first exhaust the security by bidding at the foreclosure sale. She argues that City had the duty to either purchase the property in view of its appraised value which was in excess of the balance owing to Prudential or forfeit the right to sue on its note. Thus, Peters asserts that the effect of the one-action rule on a nonforeclosing junior is to limit its *right to recover*.

█ Section 78–37–1 provides: "There can be one action for the recovery of any debt or the enforcement of any right secured solely by mortgage upon real estate which action must be in accordance with the provisions of this chapter." The rule applies to creditors secured by liens on real property and essentially dictates *the procedure* by which a creditor may collect a debt in the case of a debtor's default. Madsen, *Equitable Considerations of Mortgage Foreclosure and Redemption in Utah: A Need for Remedial Legislation*, 2 Utah L.Rev. 327, 337 (1976). First, the creditor must proceed "in accordance with the provisions of this chapter," i.e., the chapter describing mortgages. A creditor must foreclose and have a deficiency determined by the court before proceeding against the debtor personally. *Utah Mortgage & Loan Co. v. Black*, 618 P.2d 43, 45 (Utah 1980).

The one-action rule has been adopted by many states and is one of the "legislative controls placed on the enforcement of financial obligations secured by mortgages." Clifford, *Mortgages: Right of a Secured Purchase Money Mortgagee When a Foreclosure of the First Mortgage Exhausts the Security*, 4 Hastings L.J. 248–49 (1955) (referring to the California version of the one-action rule, which is virtually identical to Utah's one-action rule). Utah's one-action rule was adopted as a part of the Utah Code in the nineteenth century and has not materially changed since that time. Note, *Mortgage Foreclosure: The One Action Rule in Utah*, 6 Utah L.Rev. 560 (1959).

■ Although the rule speaks in terms of a "mortgage," Utah cases, as well as cases from many other jurisdictions, have held that the one-action rule applies to trust deeds, as in this case, as well as to mortgages. *See also First Sec. Bank of Utah, N.A. v. Felger*, 658 F.Supp. 175, 181 (D.Utah 1987); *Utah Mortgage & Loan Co. v. Black*, 618 P.2d at 43; Hetland, *Deficiency Judgment Limitations in California: A New Judicial Approach*, 51 Cal. L.Rev. 1, 35 (1963); *Keever v. Nicholas Beers Co.*, 96 Nev. 509, 512, 611 P.2d 1079, 1082 (1980). Justice Traynor, in a case interpreting the California one-action rule, emphasized that the effect of the one-action rule is to limit a creditor's *means* of enforcing its debt but not the *right* to recover:

> In the absence of a statute to the contrary, a creditor secured by a trust deed or mortgage on real property may recover the full amount of the debt upon default. He may realize the security or sue on the obligation or both.... In most states now, however, the creditor's right to enforce such a debt is restricted by statute.... [T]he creditor must rely upon his security *before* enforcing the debt.

*Roseleaf Corp. v. Chierighino*, 59 Cal.2d 35, 36, 378 P.2d 97, 98, 27 Cal.Rptr. 873, 874 (1963) (emphasis added).

■ The rule obviously applies to a creditor whose loan is in default to bar it from suing the debtor personally on the note until it first forecloses against the real property. The question raised by the case at bar is whether the one-action rule *also* applies to a "sold out junior lienor," a creditor originally secured by a second lien against real property but unsecured as a result of the senior's foreclosure.

■ This court has already addressed the question in a 1936 case. We held that the one-action rule did not apply to sold-out juniors: "[W]here the security has been lost through no fault of the mortgagee, an action may be maintained directly upon the personal obligation evidenced by the note without going through the idle and fruitless procedure of foreclosure." *Cache Valley Banking Co. v. Logan Lodge No. 1453, B.P.O.E.*, 88 Utah 577, 583, 56 P.2d 1046, 1049 (1936). We reasoned that failure to participate in the senior's foreclosure is not a "fault" on the part of the junior:

> It was no fault of the plaintiff [junior lienor] that the security for its note was lost. The fault is rather with defendant [debtor] for failing to pay the first mortgage and thus causing it to be foreclosed. The plaintiff [junior lienor] could not have prevented the loss of the security by foreclosing its second mortgage.

*Id.* Therefore, once the senior had exhausted the security, the junior was free to proceed on its note. Justice Traynor, in *Roseleaf Corp.*, supports this reasoning by comparing the respective positions of the junior and the senior lienor:

> The position of a junior lienor whose security is lost through a senior sale is different from that of a selling senior lienor. A selling senior can make certain that the security brings an amount equal to his claim against the debtor or the fair market value, whichever is less, simply by bidding in for that amount. *He need not invest any additional funds.* The junior lienor, however, is in no better position to protect himself than is the debtor. Either would have to invest additional funds to redeem or buy in at the sale. Equitable considerations favor placing this burden on the debtor, not only because it is his default that pro-

vokes the senior sale, but also because he has the benefit of his bargain with the junior lienor who, unlike the selling senior, might otherwise end up with nothing. *Roseleaf Corp. v. Chierighino,* 59 Cal.2d at 38, 378 P.2d at 100, 27 Cal.Rptr. at 876 (emphasis added).

A 1987 federal district court case further analyzes what constitutes "fault" so as to preclude a creditor from recovering on its note after the security is lost. Such "fault" must consist of blameworthy or negligent conduct specifically when

> (1) the creditor lost its lien because of failure to record a notice of assignment of mortgage; (2) the creditor released its lien because of its belief that there was no equity in the collateral; (3) the creditor disposed of the collateral by private sale under an illegal self-help remedy;[1] and (4) the creditor lost its interest in the collateral because of its failure to present a claim in a related probate proceeding.

*First Sec. Bank of Utah, N.A. v. Felger,* 658 F.Supp. at 182 (citations omitted).

Courts in other jurisdictions have focused on the one-action rule's application to a "secured creditor." These courts have held that the one-action rule does not apply to a "sold out junior lienor" since *the junior is not secured at the time it brings suit on the note,* but is rather an unsecured "general creditor":

> It has been held ... that where the security has been exhausted or rendered valueless through no fault of the mortgagee, or beneficiary under a trust deed, an action may be brought on the debt on the theory that the *limitation to the single action of foreclosure refers to the time the action is brought rather than when the trust deed was made, and that if the security is lost or has become valueless at the time the action is commenced, the debt is no longer secured....* That rule has been applied in favor of a second mortgagee, the security being considered lost or valueless as

to him, where a first mortgagee forecloses his mortgage and the property is sold for no more than the senior debt and a deed has been given.

*Brown v. Jensen,* 41 Cal.2d 193, 194, 259 P.2d 425, 426 (1953) (emphasis added); *see also* 2 *Glenn on Mortgages* § 161 (1943) (if second mortgagee becomes unsecured due to foreclosure of first mortgagee, the former is "nothing but a general creditor to the full extent of his debt"); *Carr v. Home Owners Loan Corp.,* 148 Ohio St. 533, 538, 76 N.E.2d 389, 394 (1947) ("[A] secured obligation is one which, when the time comes to enforce payment of the claim, has at least some existing security to which a creditor may look for his money.").

■ Our *Cache Valley* decision, that the one-action rule does not apply to a "sold out junior," is consistent with the purpose of the one-action rule to bar multiple suits against a debtor who has defaulted. It is well established that statutes should be construed and applied in accordance with their legislative purpose. *Parson Asphalt Products Inc. v. Utah State Tax Comm'n,* 617 P.2d 397, 398 (Utah 1980). As a result, we hold today that the one-action rule does not apply to the facts of this case to deny the junior lienor its right to recover. The purpose of the one-action rule is to regulate the procedure of recovery of a secured creditor, not to deny the creditor's contract right to recover on its loan. Therefore, when a junior becomes unsecured due to foreclosure by the senior lienor, the junior is not barred by the one-action rule from proceeding against the debtor on the note, since the creditor's status as to security is determined at the time the suit is brought.

## II. UTAH TRUST DEED ACT

Peters contends that even if City were permitted to sue her on her note, Utah's trust deed deficiency statute, section 57-1-32, limits City's recovery to costs, attorney fees, and deficiency *in excess* of $70,250, the fair market value of the property at the time of Prudential's foreclosure sale.

---

**1.** For this example of "fault," the court cited to *Lockhart Co. v. Equitable Realty Co.,* 657 P.2d 1333 (Utah 1983). However, *Lockhart* instead

simply held that a junior may not sue on its note until after the senior has foreclosed.

Since at that time, approximately $50,000 was owing to Prudential and approximately $17,000 to City, City would probably be precluded from recovering anything were it limited to a recovery in excess of $70,250.

In 1961, the Utah legislature enacted the Utah Trust Deed Act, which provided an alternative to the mortgage foreclosure process. §§ 57–1–19 to –36. Other states passed similar acts around this same time period, such as Arizona in 1971 and Washington in 1965. Hoffmann, *Court Actions Contesting the Nonjudicial Foreclosure of Deeds of Trust in Washington*, 59 Wash.L.Rev. 323 (1984); Lawyer, *The Deed of Trust: Arizona's Alternative to the Real Property Mortgage*, 15 Ariz.L.Rev. 194 (1973). Prior to the Utah Trust Deed Act, upon default, a creditor had only one choice—judicial foreclosure—whether under a mortgage or under a trust deed. The Trust Deed Act introduced a second alternative: inexpensive nonjudicial foreclosure for creditors holding a trust deed, without the six-month statutory redemption period.

■ To offset the benefit to creditors of a less expensive foreclosure and the elimination of the redemption period, states enacted statutes limiting a creditor's recovery of a deficiency judgment under a trust deed. *See First State Bank of Forsyth v. Chunkapura*, 226 Mont. 54, 734 P.2d 1203, 1205 (1987) (Mont. Trust Deed Act as quid pro quo: limits on creditor's right to deficiency judgments in exchange for limits on debtor's rights of possession and redemption). These types of statutory provisions, known as "moratoria," were passed by many states during the Great Depression of the 1930s to limit creditors' rights to recover a deficiency judgment following foreclosure. Clifford, 4 Hastings L.J. at 252; *see also U.S.B. & M. Liquidation Corp. v. Hilton*, 307 Mass. 114, 115, 29 N.E.2d 684, 685 (1940) (moratorium laws "were directed primarily to *regulation of the remedy* and ... they did not substantially impair the obligation of the contract" (emphasis added)). There are two types of deficiency statutes: one type *prohibits* deficiency judgments, and the other *limits* such judgments by requiring an offset of

the fair market value of the property at the time of sale. The Utah deficiency statute, the fair-market-value type, provides:

> At any time within three months after any sale of property under a trust deed, ... an action may be commenced to recover the balance due upon the obligation for which the trust deed was given as security, and in such action the complaint shall set forth the entire amount of the indebtedness which was secured by such trust deed, the amount for which the property was sold, and the fair market value thereof at the date of sale. Before rendering judgment, the court shall find the fair market value at the date of sale of the property sold. *The court may not render judgment for more than the amount by which the amount of the indebtedness with interest, costs, and expenses of sale, including trustee's and attorney's fees, exceeds the fair market value of the property as of the date of the sale.*

Section 57–1–32 (emphasis added). Thus, a deficiency judgment after the sale of the security is limited to the amount by which the amount of the indebtedness exceeds the fair market value of the security foreclosed on at the time of foreclosure. *See Wasatch Bank v. Leany*, 727 P.2d 633 (Utah 1986) (creditor can only recover deficiency *in excess of fair market value* of property at time of foreclosure sale).

In a recent decision, a federal district court stated that the purpose of the fair market provision of section 57–1–32 "is to protect the debtor, who in a non-judicial foreclosure has no right of redemption, from a creditor who could purchase the property at the sale for a low price and then hold the debtor liable for a large deficiency." *First Sec. Bank of Utah, N.A. v. Felger*, 658 F.Supp. at 183; *see also Roseleaf Corp. v. Chierighino*, 59 Cal.2d at 37, 378 P.2d at 99, 27 Cal.Rptr. at 875 (fair market value provisions "designed to prevent creditors from buying in at their own sales at deflated prices and realizing double recoveries by holding debtors for large deficiencies"). For example, if a trust deed secures a $90,000 loan and the value of the property is $100,000, the fair market value

deficiency statute limits a foreclosing creditor's deficiency judgment to costs, attorney fees, etc., in excess of $100,000, the value of the property. Prior to this statute, a creditor could pay $1,000 for the property at the foreclosure sale and then sue on the note for the balance of $89,000, plus costs and attorney fees. *See Weisel v. Hagdahl Realty Co.*, 241 A.D. 314, 316, 271 N.Y.S. 629, 631 (1934) (first mortgagee foreclosed when mortgage balance was $96,000; creditor bought property for $1,000; $95,000 deficiency judgment).

■ The question raised by the case at bar is, if a junior becomes unsecured by a senior's foreclosure, is the junior's subsequent suit against the debtor a suit for a deficiency, limited by section 57–1–32, or is it simply a suit on a note by a now general unsecured creditor? *Glenn on Mortgages* indicates that if the second is not secured as a result of the senior's foreclosure, the "deficiency" statute does not apply because the second's suit is not for a *deficiency*. 2 *Glenn on Mortgages* § 161 (emphasis added). Other authorities also support this reasoning:

> A deficiency judgment in California, and by the weight of authority in other jurisdictions, demands a prior sale under the power of sale of a deed of trust or a foreclosure under the mortgage *by the creditor seeking the deficiency judgment.* There was no such sale or foreclosure in this case. True, there was a foreclosure under the first mortgage, but how should that affect the second, other than to diminish the security. It is stretching [the fair market value deficiency statute] almost to the breaking point, and perhaps beyond, to say that foreclosure of the first mortgage affects the second so as to limit, and, in this case, destroy the creditor's rights.

Clifford, 4 Hastings L.J. at 252 (citations omitted); *see also U.S.B. & M. Liquidation Corp. v. Hilton*, 307 Mass. at 114–15, 29 N.E.2d at 684–85 (although the fair market value of the house was sufficient to cover the amount due on both mortgages, the junior "should not be denied full recovery of its debt [since] [t]he security of the

mortgaged land has entirely disappeared as a result of the foreclosure of the prior mortgage"); *Roseleaf Corp. v. Chierighino*, 59 Cal.2d at 37, 378 P.2d at 99, 27 Cal.Rptr. at 875 (fair market value limitations do not apply to sold-out junior).

We have not heretofore had occasion to determine whether the fair market value limitation of section 57–1–32 applies to a "sold out nonforeclosing junior lienor." However, the Utah Court of Appeals, in a recent decision, declined to apply the three-month limitation contained in section 57–1–32 to a nonforeclosing junior. *G. Adams Ltd. Partnership v. Durbano*, 782 P.2d 962 (Utah Ct.App.1989). The court reasoned that the statute only applied to a creditor who had foreclosed. Since the second lienor had not foreclosed, section 57–1–32 did not apply. *Id.* at 963.

Consistent with this ruling, we hold that since City, a sold-out junior, is unsecured, it is not pursuing a "deficiency judgment" and, therefore, the statute would not apply. As a result, City is not limited by the fair market value provision of section 57–1–32 from pursuing its claim against the debtor personally.

### III. SUMMARY JUDGMENT

In reviewing a trial court's grant of summary judgment, we view the evidence in the light most favorable to the party opposing the motion. *Hunt v. Hurst*, 785 P.2d 414, 415 (Utah 1990). An appellate court applies the same standard as that applied by the trial court. *Durham v. Margetts*, 571 P.2d 1332, 1334 (Utah 1977). Rule 56(c) of the Utah Rules of Civil Procedure requires that summary judgment be granted only if the pleadings and affidavits show that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

Peters contends that material issues of fact existed and therefore summary judgment was improper. She asserts that there were issues of fact as to (1) the value of the property at the time of the foreclosure sale and (2) whether City had "met its responsibility by law in exhausting the security before bringing its action for defi-

ciency." As to the value of the subject property, both City and Peters agree that the fair market value of the property was $70,250, which it was appraised for prior to the foreclosure sale. The value of the property, however, is not relevant to this action because we have held today that City's action is not for a deficiency judgment, but rather is simply a suit on its note. Therefore, the fair market value of the property will not limit City's recovery.

Both parties also agree that City failed to participate in the foreclosure sale. Their disagreement, however, is as to the *effect* of that failure, a legal question which we have answered, not a factual one. Because there was no issue as to any material fact, there was no error in the trial court's granting summary judgment.

## IV. COSTS AND ATTORNEY FEES

Peters contends that the trial court erred in awarding court costs to City because City did not file a "memorandum of costs," as required by Utah Rule of Civil Procedure 54(d)(2). However, we find no error inasmuch as Peters' attorney stipulated to the costs at the time of the hearing on the motion for determination of attorney fees.

Finally, Peters assails the amount of attorney fees awarded to City because it did not establish that the fees claimed to have been expended by its attorney were reasonable and necessary in light of the nature of the case nor that the rate charged was commonly charged for this type of action in the community. We have reviewed the affidavit of City's attorney and his testimony adduced in support of his request for fees and find no merit to Peters' objections. The trial court partially agreed with the objections made by Peters' attorney and reduced the hourly rate from $120 to $100 per hour in making the award. The standard of review on appeal of a trial court's award of attorney fees is "patent error or clear abuse of discretion." *Beckstrom v. Beckstrom*, 578 P.2d 520, 524 (Utah 1978). We find neither. The judgment of the trial court will not be disturbed.

Affirmed.

HALL, C.J., STEWART, and ZIMMERMAN, JJ., and BENCH, Court of Appeals Judge, concur.

DURHAM, J., having disqualified herself, does not participate herein; BENCH, Court of Appeals Judge, sat.