**ASSOCIATES FINANCIAL SERVICES, a corporation, Plaintiff and Appellee,**

v.

**Franklin L. SLAUGH and Cheryl D. Slaugh, Defendants and Appellants.**

**No. 900415.**

Supreme Court of Utah.

April 12, 1993.

---

Bryan W. Cannon, Salt Lake City, for plaintiff and appellee.

Franklin L. Slaugh, Salt Lake City, for defendants and appellants.

DURHAM, Justice:

Defendants Franklin and Cheryl Slaugh appeal from a judgment awarding $32,935.84 to plaintiff Associates Financial Services. We affirm.

In November 1982, the Slaughs entered into a loan agreement with Associates and executed a promissory note for $33,104.14 plus interest. A trust deed on property in Sandy, Utah, secured the note. Associates' lien was a second mortgage, junior to a mortgage held by Utah Mortgage Loan Corporation.

The Slaughs defaulted on the Utah Mortgage trust deed. Utah Mortgage instituted a nonjudicial foreclosure and on February 28, 1989, held a trustee sale of the property. Associates submitted the highest bid at the sale and obtained the property for $26,000, despite its fair market value in excess of $40,000.

At the time of the sale, there were unreleased federal tax liens against the Slaughs on the property.[1] The IRS exercised its redemption right, paying $26,000 to Associates and taking title to the property. Associates received a net sum of $5700[2] and sought a judgment for $26,089.71, the balance due on the note and trust deed, plus interest.

The district court denied the Slaughs' motion for summary judgment and held a bench trial on a set of stipulated facts. The court entered judgment for Associates for $26,089.71 plus interest and attorney fees, for a total judgment of $32,935.84

---

1. The parties' briefs indicate some dispute as to Associates' knowledge of the liens. The Slaughs contend that Associates had actual and constructive knowledge of the liens. Associates claims that the branch manager who attended the sale had no actual knowledge, although the liens were of record. Associates concedes, however, that its file contained a copy of a title report identifying the liens, but the file was in Dallas at the time of the sale.

2. The $26,000 sum was enough to pay $20,300 owed to the senior lienholder, leaving Associates $5700 to apply to the obligation the Slaughs owed to it.

plus interest. The Slaughs appeal, and we affirm.

On appeal, the Slaughs contend that the provisions of Utah Code Ann. §§ 57–1–32 and 78–37–1 bar Associates' suit. Section 57–1–32 provides that within three months after the sale of property, an action may be commenced to recover the balance due on the obligation for which the trust deed was given as security.[3] Section 78–37–1, also known as the "one action rule," allows only one action for recovery of a debt or enforcement of a right secured solely by a mortgage.

During the bench trial, the district court considered whether sections 57–1–32 and 78–37–1 barred Associates' suit. First, it found that Associates, as a "junior lien purchaser at the sale of a senior trust deed," was not bound by section 57–1–32. Second, it concluded that section 78–37–1 "did not require Associates to first conduct a non-judicial foreclosure before bringing its action for the balance of its debt, since the security was lost, not through the fault of Associates, but because of failures by Slaughs."

The key factor in the district court's decision appears to be that the Slaughs were not in default[4] on the junior mortgage with Associates. We agree that this fact disposes of the issues concerning the applicability of the two statutes. As we noted in *City Consumer Services, Inc. v. Peters,* 815 P.2d 234, 238 (Utah 1991), section 57–1–32 is part of the Utah Trust Deed Act, Utah Code Ann. §§ 57–1–19 to –36, which was enacted to give an additional remedy, namely, nonjudicial foreclosure, to creditors upon the default of the debtor. Hence, by its very terms and legislative history, section 57–1–32 provides a remedy for a creditor facing a defaulting debtor. This is simply not the case here, where the Slaughs did not default on the Associates mortgage. Similarly, section 78–37–1 "applies to creditors secured by liens on real property and essentially dictates *the procedure* by which a creditor may collect a debt in the case of a debtor's default." *Id.* at 235. Again, because the Slaughs were not in default, the procedure imposed by section 78–37–1 simply does not apply.

Accordingly, we agree with the district court that the two statutes do not apply to the case at bar, and we affirm the judgment for Associates. While the question of how these statutes would apply when a junior lienor purchases property *and* a debtor has defaulted on the junior's mortgage is an important one, it is not raised by the facts of this case. Consequently, we decline to address it and instead leave it for a day when it is properly before us. Affirmed.

HALL, C.J., and STEWART and ZIMMERMAN, JJ., concur.

HOWE, Associate C.J., concurs in the result.

---

**3.** The court must find fair market value and cannot award more than "the amount by which the indebtedness with interest, costs, and expenses of sale ... exceeds the fair market value" at the time of sale. Utah Code Ann. § 57–1–32.

**4.** The Slaughs were not in default on the junior mortgage in that they had not stopped making payments. However, the IRS redemption effectively extinguished Associates' interest in the property and left the mortgage unsecured. This triggered Associates' right to sue for the balance owed. This result is consistent with our case law in the area recognizing a mortgagee's right to maintain an action directly on the obligation where the security has been lost by no fault of the mortgagee. *City Consumer Servs., Inc. v. Peters,* 815 P.2d 234, 236 (Utah 1991); *Cache Valley Banking Co. v. Logan Lodge No. 1453, B.P.O.E.,* 88 Utah 577, 56 P.2d 1046, 1049 (1936). It is also consistent with the terms of the parties' security agreement.