**APS, a Utah general partnership, Plaintiff and Appellant,**

v.

**Garth E. BRIGGS, et al.; Vaughn L. Pulsipher; Autumn Development and Construction Company, a Utah corporation, aka Autumn Development and Construction; and American Real Estate Associates, a Utah corporation, Defendants and Appellees.**

**No. 950756–CA.**

Court of Appeals of Utah.

Nov. 15, 1996.

Stephen C. Tingey and Brent D. Wride, Salt Lake City, for Appellant.

Garth E. Briggs, Salt Lake City, Pro Se.

Dennis W. Haslam and John W. Holt, Salt Lake City, for Appellees.

Before ORME, P.J., and JACKSON and WILKINS, JJ.

OPINION

JACKSON, Judge:

Plaintiff APS appeals the trial court's judgment dismissing its collection action against defendant Vaughn L. Pulsipher on the

ground that the six-year statute of limitations had run. We reverse and remand.

## FACTS

On June 18, 1986, the four defendants in this case—Garth E. Briggs, Vaughn L. Pulsipher, Autumn Development and Construction Company (Autumn Development), and American Real Estate Associates—signed a trust deed note in favor of APS. By signing the note, these four comakers jointly and severally promised to pay APS $75,000 plus interest by June 18, 1987. The note was secured by a trust deed executed solely by comaker Autumn Development, encumbering real property in Salt Lake County. This property was already encumbered by a lien held by Valley National Mortgage Company (Valley National).

On January 11, 1988, Autumn Development filed a bankruptcy petition and was automatically granted a stay against all acts to enforce liens against its property. *See* 11 U.S.C.A. § 362(a) (West 1993). On November 17, 1991, Valley National had the automatic stay lifted and exercised its senior lien rights to begin a nonjudicial foreclosure on the property that had also served as collateral on the note held by APS. The foreclosure was completed on April 22, 1993.

APS filed this collection action against the four comakers on November 10, 1993, alleging that no payments had ever been made on the note. Pulsipher moved to dismiss the claim against him, arguing that the six-year statute of limitations had run. *See* Utah Code Ann. § 78–12–23 (Supp.1992). Pulsipher argued that the statute began to run at least by June 18, 1987—the date the entire loan was due—and therefore had expired at least by June 18, 1993, several months before the action was filed. The other three comakers have raised different defenses. Therefore, this appeal involves only APS's claim against Pulsipher.

In response to Pulsipher's motion to dismiss, APS argued that the statute of limitations was tolled by a combination of Utah Code Ann. § 78–37–1 (1992) (the one-action rule), 11 U.S.C.A. § 362(a), and Utah Code Ann. § 78–12–41 (1992). The trial court re-

jected APS's arguments and granted Pulsipher's motion to dismiss. When APS's motion to reconsider was denied, APS obtained certification of the order dismissing APS's action as a final order. This appeal followed.

## ISSUE AND STANDARD OF REVIEW

On appeal, APS makes a three-part argument that the statute of limitations did not run on its claim against Pulsipher: (1) Utah's one-action rule prevented APS from suing Pulsipher and the other comakers until Autumn Development's real property was foreclosed or lost, even though Autumn Development was the only comaker who provided any security; (2) 11 U.S.C.A. § 362(a) (West 1993) temporarily stayed APS from filing an action to foreclose on the property; and (3) Utah Code Ann. § 78–12–41 (1992) mandates that the time during which the statutory stay was in effect not be counted as "part of the time limited for the commencement of the action."

Pulsipher does not dispute APS's characterization of 11 U.S.C.A. § 362(a) or Utah Code Ann. § 78–12–41, but rather challenges APS's interpretation of the one-action rule. Pulsipher contends that the one-action rule only protects debtors who personally provided the property securing their debt. Pulsipher argues that APS could have sued Pulsipher without waiting for Autumn Development's property to be foreclosed or lost, and thus the statute of limitations should not have been tolled.

■ From these arguments, we conclude that the proper issue for our consideration is this: Does Utah's one-action rule protect comakers on a secured promissory note who provided none of the real property securing the note? This issue is one of law, and therefore we give no deference to the trial court's judgment. *See Sanders v. Ovard,* 838 P.2d 1134, 1135 (Utah 1992).

## ANALYSIS

■ Utah's one-action rule provides that "[t]here can be one action for the recovery of any debt or the enforcement of any right secured solely by mortgage upon real estate." Utah Code Ann. § 78–37–1 (1992).

Under this rule, "[a] creditor must foreclose and have a deficiency determined by the court before proceeding against the debtor personally." *City Consumer Servs., Inc. v. Peters,* 815 P.2d 234, 235 (Utah 1991) (citing *Utah Mortgage & Loan Co. v. Black,* 618 P.2d 43, 45 (Utah 1980)); *see also Bank of Ephraim v. Davis,* 581 P.2d 1001, 1003 (Utah 1978) (stating "the mortgaged property constitute[s] a primary fund ... to which the mortgagee must first resort for the discharge of the debt, and until that fund has been exhausted the mortgagee has no personal right of action against the mortgagor"). "Although the rule speaks in terms of a 'mortgage,' Utah cases ... have held that the one-action rule applies to trust deeds ... as well as to mortgages." *Peters,* 815 P.2d at 236. An exception to the one-action rule is where the security has been lost or rendered valueless through no fault of the creditor. *Id.; see also Lockhart Co. v. Equitable Realty, Inc.,* 657 P.2d 1333, 1335–36 (Utah 1983); *Cache Valley Banking Co. v. Logan,* 88 Utah 577, 583, 56 P.2d 1046, 1049 (1936). In accordance with this exception, the Utah Supreme Court has held the one-action rule does not apply to a " 'sold out junior lienor,' a creditor originally secured by a second lien against real property but unsecured as a result of the senior's foreclosure." *Peters,* 815 P.2d at 236.

The Utah Supreme Court has declared that "[t]he underlying purpose of the single-action statute is to preclude the creditor from waiving the security and suing directly on the contract to pay money and hold the debtor rather than the security primarily liable." *Davis,* 581 P.2d at 1003; *accord Black,* 618 P.2d at 45; *Mickelson v. Anderson,* 81 Utah 444, 452, 19 P.2d 1033, 1036 (1932). The one-action rule represents a policy preference that, when available, real property collateral be used before the debtor's personal assets to satisfy debts. One commentator has observed that absent this security-first requirement, the creditor "could dispose of any of a debtor's assets the creditor chooses and disrupt the debtor's preferences in that regard. A creditor's method of disposing of the assets also could realize fewer net proceeds than a method chosen by a debtor." J. David Milliner, *Real Property Collateral: The "One–Action" Rule in Action,* 1991 Utah L.Rev. 557, 559.

■ The one-action rule's requirement that the security be exhausted first is primarily intended to protect the debtor. However, the rule does not impair the right of the creditor to recover on its loan. As the Utah Supreme Court has stated, "The purpose of the one-action rule is to regulate the procedure of recovery of a secured creditor, not to deny the creditor's contract right to recover on its loan." *Peters,* 815 P.2d at 237. This method of satisfying debts thus accommodates both the debtor's desire to maintain maximum control over assets and the creditor's desire to recover on the loan. In addition, the rule effectuates "the implied understanding between the parties that the land shall constitute the primary fund to secure the debt." *Paramount Ins., Inc. v. Rayson & Smitley,* 86 Nev. 644, 472 P.2d 530, 535 (1970) (Thompson, J., concurring).

In this case, APS's position that it was precluded from suing Pulsipher until Autumn Development's property was foreclosed or lost is consistent with the policy that the property securing the debt be pursued first to satisfy the debt. It also enforces the implied understanding between APS and Pulsipher that Autumn Development's land would constitute the primary fund to secure and potentially satisfy Pulsipher's debt.

■ APS's position is also in accord with a second purpose of the one-action statute: to "eliminate harassment of debtors and multiple litigation which sometimes occurred under the common-law rule" that allowed a creditor holding a secured note to sue the debtor personally, or foreclose on the security, or both. *Black,* 618 P.2d at 45; *accord Mickelson,* 19 P.2d at 1036. The one-action statute eliminates multiple litigation against a defaulting debtor, and the potential that such litigation will harass the debtor, by requiring the creditor to combine both actions into one proceeding—a foreclosure action with the possibility of a deficiency judgment.

APS's position is consistent with this second purpose because, by requiring the creditor to first exhaust the security, it reduces the potential of multiple suits against comak-

ers. Pulsipher's position, on the other hand, increases the possibility of multiple litigation, because it would permit a creditor to bring actions against each of the comakers who did not personally provide the security for the debt, while concurrently foreclosing on the mortgaged property.

In sum, because Pulsipher's position would frustrate both purposes of the one-action rule, we reject his position and conclude that the rule requires creditors to exhaust their security before suing comakers who provided none of the security. Thus, in this case, APS was precluded from pursuing Pulsipher personally until the property securing the debt was exhausted or lost, which occurred when Valley National, the senior lien-holder, foreclosed on the property. At that time, APS became an unsecured creditor and the one-action rule no longer prevented APS from suing Pulsipher personally on the note.

The language of the one-action statute, interpreted in accordance with the purposes of the rule, is consistent with our conclusion that the one-action rule covers comakers who provide none of the security. *See Peters,* 815 P.2d at 237 (stating that statutes should be "construed and applied in accordance with their legislative purpose"). As noted above, the one-action statute protects parties with "any debt ... secured solely by mortgage upon real estate." Utah Code Ann. § 78–37–1 (1992). The statute does not contain language restricting the rule's application to only those debts secured by that particular debtor's real property. The lack of such restrictive language suggests that whether the debtor and the mortgagor are the same party or are two different parties is of no consequence. In either case the debt is secured by mortgage and all primary debtors are entitled to the protections of the one-action rule.

Finally, we note that our result today is in harmony with four California cases—one of them federal—that decided, as we have, that the one-action rule protects comakers who provided none of the security on the note. *See In re Pajaro Dunes Rental Agency, Inc.,* 156 B.R. 263, 268 (N.D.Cal.1993); *Gnarini v. Swiss Am. Bank,* 162 Cal. 181, 121 P. 726, 728 (1912); *Shin v. Superior Court,* 26 Cal. App.4th 542, 31 Cal.Rptr.2d 587, 594–95 (Ct. App.1994); *Pacific Valley Bank v. Schwenke,* 189 Cal.App.3d 134, 234 Cal.Rptr. 298, 301–03 (Ct.App.1987). These California decisions are especially helpful to us in interpreting Utah's one-action statute, because Utah's statute is patterned after California's one-action statute, and because Utah and California have interpreted their one-action statutes almost uniformly. *See* Milliner, *supra,* at 562–63; *see also Peters,* 815 P.2d at 236 (using California interpretations of California one-action rule to interpret Utah's one-action rule); *Bacon v. Raybould,* 4 Utah 357, 360, 10 P. 481, 483 (1886) (implying that Utah and California one-action statutes are similar in form and meaning).

## CONCLUSION

After considering the purposes and language of Utah's one-action rule, we hold that the rule applies to comakers of a secured promissory note who provided none of the security on the note. Under this rule, therefore, a creditor may not seek a personal judgment against a comaker on a debt secured solely by mortgage upon real estate, regardless of whether the comaker provided the security, until the security is foreclosed or depleted through no fault of the creditor.

Because APS could not proceed against Pulsipher personally until Autumn Development's property was foreclosed or lost, the statute of limitations did not run on APS's claim, and Pulsipher's motion to dismiss on the ground that the statute of limitations had run should have been denied. Accordingly, we reverse the trial court's decision on the motion to dismiss, and remand for further proceedings.

ORME, P.J., and WILKINS, J., concur.